J-A15028-20
J-A15046-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3404 EDA 2019 |

Appeal from the Order Entered November 6, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000116-2017

\*\*\*\*\*

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A-L.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3460 EDA 2019 |

Appeal from the Order Entered November 6, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000785-2019

BEFORE:   LAZARUS, J., KING, J., and STRASSBURGER, J.\*

MEMORANDUM BY LAZARUS, J.:                    Filed: August 13, 2020

---

\* Retired Senior Judge assigned to the Superior Court.

A.W. (Mother) appeals from the orders, entered in the Court of Common Pleas of Philadelphia, terminating her parental rights to her minor child, S.H.[1] (born 12/16), pursuant to 23 Pa.C.S.A. §§ 2511 (a)(1), (2), (5), (8), and (b), and changing S.H.'s permanency goal from reunification to adoption pursuant to 42 Pa.C.S.A. § 6351(f.1).[2]  Upon careful review, we affirm.

DHS became involved with Mother's family on January 17, 2017, after receiving reports that Mother tested positive for PCP and marijuana at S.H.'s birth.  When S.H. was four weeks old, he sustained an unexplained fractured skull.  N.T. Termination Hearing, 11/6/19, at 8.  As a result, on February 3, 2017, S.H. was removed from Mother's care and placed into protective custody by the Philadelphia Department of Human Services (DHS).  Trial Court Order, 2/19/17.

After S.H. was placed in DHS' custody, Mother was given the following case plan objectives:  (1) complete parenting classes; (2) complete family school; (3) attend supervised visits at DHS; and (4) submit to a dual-diagnosis drug and alcohol and mental health assessment.  *Id.* at 9.  At the first permanency hearing, held in May of 2017, the goal was reunification.  Trial Court Order, 5/3/2017. Mother complied with her plan objectives and

---

[1]  A/K/A S.A.-L.H.

[2]  The appeal docketed at 3460 EDA 2019 was transferred to this panel as a related appeal on July 8, 2020.  *See* Order Transferring Appeal, 7/8/20.  We consolidated the appeals at 3404 EDA 2019 and 3460 EDA 2019 *sua sponte* for ease of disposition.  *See* Pa.R.A.P. 513.

appeared to have obtained stable housing with her biological mother; thus, Mother and S.H. were reunified in February of 2018. N.T. Termination Hearing, 11/6/19, at 10-11.

Following reunification, DHS and CUA were unable to locate Mother and S.H. for almost three months. *Id.* On July 13, 2017, Mother and S.H. were found at a relative's home. *Id.* at 12. A 90-day safety plan was created with that caregiver, and S.H. was enrolled in daycare; however, two days later, CUA found that Mother and S.H. had absconded the caregiver's home. *Id.* Thus, on July 25, 2018, Child was placed back into DHS' custody.

While Mother had custody of S.H., S.H. was not kept up to date on his medical and dental appointments. *Id.* at 24. Additionally, Mother did not enroll S.H. in daycare. *Id.* at 12.

Following S.H.'s return to DHS care, Mother was compliant with some of her objectives, but failed to obtain stable housing and employment. *Id.* at 13, 25. Between February 2018 and November 2019, Mother provided fourteen different addresses to CUA, almost all of which were invalid. *Id.* at 13-14. Mother acquired full-time employment at Speedway in Norristown in August of 2018, but quit three months later, claiming the commute was too far. *Id.* at 26. At the time of the termination hearing, Mother worked approximately eight hours a week, employed as a home health aide for Credence Home Healthcare. *Id.* at 25.

With regard to her court-ordered scheduled and random drug screenings, Mother was minimally compliant. *Id.* at 25. Between September 6, 2018 and May 29, 2019, Mother failed to complete any random drug screenings. *Id.* at 15. Out of the twenty-one random drug tests Mother was required to complete, she completed three. *Id.* Mother completed four additional drug tests on days she had selected. *Id.* On April 11, 2019, Mother completed a scheduled drug test following a permanency hearing. *Id.* at 16-17. The sample she provided had particles floating in it, which suggested tampering. N.T. Permanency Hearing, 6/13/19, at 10-11. When asked to provide another sample that day, Mother refused. *Id.* Instead, Mother came back the following day to provide the sample. *Id.* At the termination hearing, Mother stated that she did not retake the drug test the same day because she was late for her shift as a home health aide at Aveanna. N.T. Termination Hearing, 11/6/19, at 51. Mother, however, offered no proof of her employment at Aveanna. *Id.* at 25-26. CUA case manager Jelea McNeil testified that Mother's non-compliance with drug screening, inconsistent and questionable employment, and unstable housing were Mother's greatest obstacles to reunification. *Id.* at 20-21.

On October 21, 2019, DHS filed a petition to involuntarily terminate Mother's parental rights to S.H. pursuant to 23 Pa.C.S.A. §§ 2115 (a)(1), (2), (5), and (8), and (b), and to change S.H.'s permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351(f.1). On November 6, 2019, following a

hearing, the trial court terminated Mother's parental rights to Child and changed Child's permanency goal to adoption. Mother filed this timely appeal.[3] She raises the following issues for review:

> (1) Did the trial court err as a matter of law or abuse its discretion when it found that the Philadelphia Department of Human Services (DHS) met its burden to prove that the requirements of 23 Pa.C.S.A. § 2511(a) were met?
>
> (2) Did the trial court err as a matter of law or abuse its discretion when it found that DHS met its burden to prove that the requirements of 23 Pa.C.S.A. § 2511(b) were met?
>
> (3) Did the trial court err as a matter of law or abuse its discretion when it found that it was in [S.H.'s] best interest to change the permanency goal from reunification to adoption?

Appellant's Brief, at 2.

In an appeal from an order terminating parental rights, the scope of review is comprehensive. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). This Court considers "all the evidence presented as well as the trial court's factual findings and legal conclusions." *Id.* We will reverse "only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings." *Id.* It is well settled that "[t]he trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004)

_____

[3] The court also terminated the parental rights of Child's father. Father did not appeal the termination of his parental rights. *See* Trial Court Opinion, 1/13/20, at 1.

- 5 -

(citation omitted). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387,394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights is governed by 23 Pa.C.S.A. § 2511 of the Adoption Act,[4] which provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of

---

[4] 23 Pa.C.S.A. §§ 2101-2938.

time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b).

Parental rights may be involuntarily terminated "where any one subsection of [s]ection 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1115 (Pa. Super. 2010). In this two-step analysis, the focus is initially on the conduct of the parent. *See In re L.M.*, *supra* at 511. "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a)." *Id.* This standard requires evidence "so clear, direct, weighty, and convincing as to

enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004).

If the court decides that the parent's conduct warrants termination of parental rights, it then engages in the second part of the analysis pursuant to 2511(b). *Id.* "One major aspect of [this] analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." *Id.* Additionally, the court must "equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent[.]" *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

When changing a child's permanency goal, the court must determine the goal in accordance with the child's best interests, not those of the parents. *See In re G.P.-R.*, 851 A.2d 967, 973 (Pa. Super. 2004). The "[s]afety, permanency and well-being of the child must take precedence over all other considerations." 42 Pa.C.S.A. § 6351. Section 6351(f) provides, in pertinent part, that at each permanency hearing, a court shall determine the following:

> (1) The continuing necessity for and appropriateness of the placement.
>
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

42 Pa.C.S.A. § 6351(f). Based upon the court's determinations under section 6351(f), and all relevant evidence presented at the hearing, the court shall choose a permanency goal under section 6351(f.1), which provides the following relevant options:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(f.1).

"When circumstances are such that the best interests of the child dictate a goal change to adoption, then the trial court acts well within its authority to order the goal change — even if the parent has made substantial progress toward completion of his or her permanency plan[.]" *In re A.K.*, 936 A.2d 528, 534 (Pa. Super. 2007); *see also In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006) (finding goal change to adoption in best interest of child despite

- 9 -

mother's substantial progress toward permanency plan). Additionally, at the review hearing for a child who has been removed from the parental home, the court must consider the factors mandated under section 6351. *See In re D.P.*, 972 A.2d 1221, 1230 (Pa. Super. 2009) (citation omitted).

If a parent has "cooperated with the agency, achieved the goals of his or her permanency plans, and alleviated the circumstances that necessitated the child's original placement[,]" the agency should continue efforts to reunite the child with his or her parent. *Id.* (citation omitted). But, if a child welfare agency makes reasonable efforts to return a foster child to his or her biological parent, and those efforts have failed, the agency must redirect its efforts towards placing the child into an adoptive home. *See In re N.C.*, *supra* at 823.

Before we address the merits of Mother's claims, we must address the shortcomings of her brief submitted for 3404 EDA 2019, the appeal of S.H.'s permanency goal change to adoption.[5] Appellate briefs must conform in all respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure; otherwise, they may be quashed or dismissed. *See* Pa.R.A.P. 2101. Regarding the summary of argument section of an appellate brief, Rule 2118 requires a "concise, but accurate, summary of the arguments presented in support of the issues in the statement of questions involved.

---

[5] Mother submitted separate, materially different, briefs for each appeal.

Pa.R.A.P. 2118. Here, Mother's summary of argument describes circumstances wholly unrelated to those at hand. Additionally, in the first line of the summary, Mother asks this Court to reverse the trial court's decision, but in the last line, she asks this Court to affirm. *See* Appellant's Brief, at 8-9.[6]

Additionally, Mother's argument section is woefully underdeveloped. Regarding S.H.'s permanency goal change to adoption, Mother's argument consists of a cut-and-paste of the rationale included in the trial court's opinion, followed by one paragraph of unsubstantiated conclusions about Mother's progress toward her goals. *See* Appellant's Brief, at 26-27. She includes no references to the record, as required by Pa.R.A.P. 2119(c). Mother's section 2511(a)(2) analysis, in particular, appears to include pages of cut-and-pasted material from an entirely different appeal. *See* Appellant's Brief, at 13-14. *See also* Pa.R.A.P. 2101 (if defects in brief of appellant are substantial, the appeal may be quashed).

In this instance, the defects are indeed substantial; however, in the interests of justice and expediency, we will address Mother's permanency goal change. We have carefully reviewed the record, and we are fully satisfied that the trial court opinion properly disposes of the permanency goal change issue Mother has raised on appeal. *See* Trial Court Opinion, *supra* at 5-6 (Mother refused to participate in court-ordered drug testing to ensure her sobriety;

---

[6] This appears to be a cut-and-paste of filings from a different case.

Mother refused to retake a drug screen after her initial sample appeared to be tampered with; Mother was unable to secure safe and permanent housing for S.H., providing 14 different addresses in 14 months; Mother failed to comply with many of her objectives, specifically drug screens, employment and housing; Mother's failure to comply with her plan objectives undermined S.H.'s safety; and S.H.'s permanency interests were best served by changing the goal to adoption).

After careful review, we are also satisfied that the trial court opinion properly disposes of Mother's appeal from the order terminating her parental rights. Here, the evidence of record supports the trial court's finding that termination was proper pursuant to sections 2511(a)(1), (2), (5) and (8). *See* Trial Ct. Op., *supra* at 7-13 (finding: (1) pursuant to section 2511(a)(1), Mother's refusal to comply with her single case plan objectives, failure to acquire stable housing, failure to acquire more than eight hours a week of work, failure to properly address her PCP and marijuana usage, and failure to complete random drug screenings evidenced settled purpose of relinquishing parental claim to S.H. and failure to perform parental duties; (2) pursuant to 2511(a)(2), "incapacity," "refusal," and "neglect" exists given Mother's failure to comply with random drug screenings despite fact she knew compliance would reinstate community visits and potentially eliminate need for future random drug screenings, Mother's failure to keep S.H. up to date medically in her custody, and Mother's failure to comply with her objectives, which left S.H.

without essential parental care; (3) pursuant to sections 2511(a)(5) and (8), at the time of the hearing S.H. had been out of Mother's care for 28 of previous 32 months, Mother's unwillingness to comply with random drug screening, find stable housing, or find adequate employment shows circumstances leading to S.H.'s placement are unresolved and Mother is unwilling to resolve them, adoption is in S.H.'s best interest as he has adjusted well to pre-adoptive home and built strong bond with foster parent).

Further, the trial court opinion accurately explains why Mother's parental rights were correctly terminated pursuant to section 2511(b). **See** Trial Ct. Op., **supra**, at 14-15 (finding: S.H. would not suffer irreparable emotional harm if Mother's parental rights were terminated; S.H. does not seek comfort or care from Mother; S.H. seeks comfort and care from others, including his foster parents; testimony shows S.H.'s primary attachment is with his foster parents; S.H. is no closer to reunification than when the case was initiated in 2017; Mother had not been able to meet S.H.'s needs for 32 months prior to the termination hearing).

We conclude that the trial court's decisions to terminate Mother's parental rights under sections 2511(a) and (b) are supported by clear and convincing evidence. **In re L.M.**, **supra**. We also conclude that the trial court correctly determined that it was in S.H.'s best interests to change the permanency goal from reunification to adoption pursuant to 42 Pa.C.S.A. §

6351(f.1). ***In re: A.K.***, ***supra***. We find no abuse of discretion. ***In re L.M.***, ***supra***.

The trial court opinion, authored by the Honorable Daine Grey, Jr., properly disposes of the issues Mother has raised on appeal. Therefore, we affirm the trial court's orders based on Judge Grey's opinion, and we direct the parties to attach a copy of that opinion in the event of further proceedings.

Orders affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/13/20

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
JUVENILE DIVISION

| | | |
|---|---|---|
| IN RE: S.H. | : | SUPERIOR COURT |
| | : | 3460 EDA 2019 |
| | : | 3404 EDA 2019 |
| | : | |
| | : | |
| | : | COURT OF COMMON PLEAS |
| | : | CP-51-AP-0000785-2019 |
| | : | CP-51-DP-0000116-2017 |
| | : | FID: 51-FN-000137-2017 |
| | : | |
| APPEAL OF: A.W., Mother | : | |
| | : | |

**OPINION**

DAINE GREY JR., J.                                                    DATE: January 13, 2020

A.W. ("Mother") timely appeals this Court's decrees entered on November 6, 2019,

granting the Philadelphia Department of Human Services' ("DHS") petitions to involuntarily

terminate her parental rights to her child, S.H., born December ⬛, 2016 ("Child") pursuant to

the Adoption Act, 23 Pa. C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b).[1]

## I.     PROCEDURAL HISTORY & FACTS

The relevant procedural history and facts are as follows: DHS first became aware of

Child and family after Mother tested positive for PCP and marijuana at Child's birth and Child

had an unexplained fractured skull. (N.T. 11/6/19 at 8). Child was removed from Mother's care

and placed into DHS custody. (Trial Court Order 1/19/2017). At the adjudicatory hearing held

---

[1] This Court entered separate decrees that same day, terminating the parental rights of the Child's putative
father. Father did not appeal the termination of his parental rights.

1

on February 3, 2017, Child was adjudicated dependent based upon present inability, granting DHS full legal custody. (Trial Court Order 2/3/2017). An initial permanency hearing was held May 3, 2017, at which time the goal for Child was reunification with Mother. (Trial Court Order 5/3/2017). This Court reunited Child with Mother due to her compliance with her objectives in February 2018. (Trial Court Order 1/23/2018). However, this Court ordered DHS to obtain and Order for Protective Custody ("OPC") at a permanency review hearing on July 23, 2018 due to testimony that CUA had not seen Child since July 13, 2018, Child was not up to date medically or dentally and Child had not been enrolled in day care. (Trial Court Order 7/23/2018). Child was recommitted to DHS custody at a Shelter Care hearing on July 25, 2018. (Trial Court Order 7/25/2018).

October 21, 2019, DHS filed petitions to involuntarily terminate Mother's parental rights to the Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8) and (b) and to change the Child's permanency goals to adoption. This Court conducted a combined termination and goal change hearing (collectively the "TPR" hearing) on November 6, 2019. At the TPR hearing, the Community Umbrella Agency "CUA" case manager, Jelea McNeil, testified that Child had been in foster care since July 2018, after a period of reunification with Mother for five months. (N.T. 11/6/2019 at 11). According to Ms. McNeil, Mother was originally given the following case plan objections: 1) complete parenting classes, 2) complete Family School, 3) supervised visits at the agency and 4) dual diagnosis - drug and alcohol and mental health assessment prior to Mother's reunification with Child. (*Id.* at 9). [2] Ms. McNeil testified that Mother has failed to comply with her Single Case Plan objectives in the eighteen months prior to the TPR hearing. (*Id.* at 28).

---

[2] At the June 13, 2019 permanency review hearing, Ms. McNeil also indicated that Mother's objectives include employment, random drug testing and housing. (N.T. 6/13/19 at 8).

2

According to Ms. McNeil, Mother had reported to her fourteen different addresses during the time period of February 2018 to July 2018, almost all of which were deemed invalid. (*Id.*). At the time of the TPR hearing, Mother was receiving mail in Norristown, Pennsylvania; however, she reported that she did not reside there. (*Id.* at 26). Also, Ms. McNeil testified that Mother was working approximately eight hours a week, despite previously being employed full time until December 2018. (*Id.* at 25). Additionally, Ms. McNeil testified that Child was not up to date medically while he was in Mother's custody. (*Id.* at 24).

Ms. McNeil also testified regarding Mother's court ordered drug screens. According to Ms. McNeil, Mother failed to complete any random drug screens during the period of September 6, 2018 to May 29, 2019. *(Id.* at 15). Additionally, Ms. McNeil testified that Mother missed a forthwith drug screen scheduled on April 11, 2019 because Mother failed to retake the drug screen after the first sample was tampered with. (*Id.* at 16). Throughout the pendency of this case, Ms. McNeil reported that Mother attended seven out of twenty-one random drug screens, four of which were arranged by Mother on dates Mother selected (*Id.*). She testified that Mother's lack of consistency with drug screening, along with unstable housing and income, have been the most significant barriers to reunification from CUA's perspective. (*Id.* at 20-21).

Mother also testified at the TPR hearing. She denied the reports that her housing was unstable and claimed she only had three different addresses during the reported time period, including Maternal Grandmother's house. (*Id.* at 41). She also testified that she chose to leave Maternal Grandmother's house with Child. (*Id.*). She testified that the address where she receives her mail is her mailing address and that she currently resides with Maternal Grandmother. (*Id.* at 46, 47).

Mother also testified regarding her employment. She claimed she works eight hours weekly "on and off" because she is also employed with an agency as a home health aide. (*Id.* at 47, 51). She also disputed the amount of missed drug screens and testified the screens were missed due to her employment shifts. (*Id.* at 47). She testified that the missed forthwith drug screen was the result of contaminated samples by the CEU staff and she could not retake the drug screen the same day because she had to work. (*Id.* at 49-50, 51).

Based on the foregoing testimony, this Court issued a decree involuntarily terminating the parental rights of Mother under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) and (8) and finding, in accordance with 23 Pa.C.S.A. § 2511(b), that such termination best serves the developmental, physical, and emotional needs and welfare of the Child. (Trial Court Order 11/6/19 at 1). Mother, along with counsel, filed a timely Notice of Appeal along with a Statement of Errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), the latter of which is reproduced *verbatim* herein:

1. The trial court erred as a matter of law and abused its discretion when it found DHS met its burden to prove that the requirements of 23 Pa.C.S.A.2511(a) were met.

2. The trial court erred as a matter of law and abused its discretion when it found DHS met its burden to prove that the requirements of 23 Pa.C.S.A.2511(b) were met.

3. The trial court erred as a matter of law and abused its discretion when it determined that it was in S.H.'s best interests to change the permanency goal from reunification to adoption.

(Statement of Errors).

4

## II. DISCUSSION

### A. This Court Properly Determined That It Was in S.H.'s Best Interests to Change the Permanency Goal from Reunification to Adoption

The standard of review for changing the permanency goal of a dependent child is abuse of discretion. *In re R.M.G.*, a Minor., 997 A.2d 339, 345 (Pa. Super. 2010). A trial court's decision constitutes an abuse of discretion only if it is manifestly unreasonable or is the product of partiality, prejudice, bias, or ill-will. *Id.* Although the agency must show a goal change would serve the child's best interests, "[s]afety, permanency, and well-being of the child must take precedence over all other considerations" under Section 6351. *Id.* A goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan, because the Court's primary concern must be the child's best interest. *In re N.C.*, 909 A.2d 818, 826-7 (Pa. Super. 2006).

Under these specific facts and circumstances, this Court properly determined that it was in Child's best interest to change the permanency goal from reunification to adoption. Here, Mother's largest barrier to reunification was instability in housing and employment, and refusal to participate in court ordered drug testing to ensure her sobriety (N.T. 6/13/2019 at 8). There was significant testimony from Ms. McNeil that Mother was unable to acquire safe and permanent housing for Child, as she provided fourteen different addresses within fourteen months. (*Id.* at 26). Additionally, there were still uncertainties as to Mother's permanent address at the time of the TPR hearing, as she testified her mailing address and residence do not match. (*Id.* at 26, 28). More significantly, Mother failed to comply with Court ordered drug testing, despite the significance of her prior drug use throughout the pendency of this case. At the permanency review hearing held on April 11, 2019, Mother was ordered to take a forthwith drug

5

screen (Trial Court Order 4/11/2019). However, Mother declined to retake the drug screen that day after the initial drug screen was tampered with (N.T. 6/13/2019 at 11). Additionally, Mother declined to participate in the majority of her random drug screens. (*Id.*). Child was adjudicated dependent due to Mother's PCP and marijuana use and the subsequent unexplained skull fracture Child received. (N.T. 11/6/19 at 8). Despite drug use significantly contributing to Child's dependency, Mother failed to cooperate with most of her random drug screens, including a forthwith drug test, and demonstrate her continued sobriety. Although Mother did attend visitation with the Child, Mother still failed to comply with many of her objectives, specifically continued drug screens, employment and housing. (N.T. 6/13/2019 at 12). Because Mother failed to address these objectives, Child's safety and permanency were best served by changing her permanency goal to adoption. Therefore, this Court did not abuse its discretion by changing Child's permanency goal.

## B. This Court Properly Granted Petitioner's Petition to Involuntarily Terminate the Parental Rights of Mother Pursuant to Sections 2511(a)(1), (2), (5), (8) and (b)

When considering an appeal from an order involuntarily terminating parental rights, an appellate court must accept as true the trial court's findings of facts so long as they are supported by the record, and then determine whether the trial court made an error of law or abused its discretion in rendering its decision. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). A trial court's decision constitutes an abuse of discretion only if it is manifestly unreasonable or is the product of partiality, prejudice, bias, or ill-will. *Id.* An abuse of discretion will not result merely because the reviewing court might have reached a different decision. *In re R.J.T.*, 608 Pa. 9 A.3d 1179, 1190 (2010).

6

The party seeking termination must establish, by clear and convincing evidence, the existence of grounds for termination. *In re J.L.C.*, 837, A.2d 1247, 1251 (Pa. Super. 2003). Clear and convincing evidence is evidence that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) *(en banc)*.

The termination of parental rights is governed by 23 Pa.C.S.A. § 2511, which requires a two-step analysis. In the first step, the party seeking termination must prove by clear and convincing evidence that the parent's conduct meets at least one of the 11 grounds set forth in Section 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). If the court determines that the petitioner has proven at least one of the provisions of Section 2511(a), only then does it proceed to the second step. *Id.* In the second step, the court must determine whether, considering the child's developmental, physical, and emotional needs and welfare, termination is in the best interest of the child. 23 Pa.C.S.A. § 2511(b); *In re Adoption of S.P.*, 47 A.3d at 830. In conducting this analysis, the court should examine the emotional bond between parent and child, with close attention to the effect that permanently severing any such bond will have on the child. *In re L.M.*, 923 A.2d at 511. Additionally, in order to affirm, an appellate court need only agree with the trial court as to any one subsection of 2511(a), as well as 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

Instantly, this Court found that grounds for involuntary termination of Mother's parental rights existed pursuant to 2511(a)(1), (2), (5), (8) and (b). *(See* Trial Court Order 11/6/19 at 1). This Court will address each subsection separately.

1. **This Court Properly Terminated Mother's Parental Rights Pursuant to Section 2511(a)(1)**

7

Pursuant to Section 2511(a)(1), Pennsylvania law provides that the rights of a parent may be involuntarily terminated after a petition has been filed if "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

Under these specific facts and circumstances, this Court found clear and convincing evidence that Mother demonstrated a settled purpose of relinquishing parental claim to the Child and failed to perform any parental duties for at least six months preceding the filing of the termination petitions on October 21, 2019. The Child was removed from Mother's care in July 2018. (N.T. 11/6/19 at 12). Additionally, Child had previously been removed from Mother's care from January 2017 to February 2018. (*Id.* at 8-9). Mother's refusal to parent since that time was demonstrated by her failure to comply with her single case plan objectives. Mother failed to acquire stable housing for the Child, which was one of the causes for DHS to reobtain custody in July 2018. (*Id.* at 11). Mother provided Ms. McNeil with fourteen different addresses during the period of February 2018 to July 2018, almost all of which were deemed invalid. (*Id.* at 13). Additionally, this instability was still apparent at the TPR hearing, as Mother reported that she resided with Maternal Grandmother; however, Mother provided the Court with a different mailing address. (*Id.* at 14, 26). Mother has also failed to obtain stable employment necessary to care for Child. Ms. McNeil testified that Mother works approximately eight hours a week and has failed to acquire more hours or income. (*Id.* at 47).

More notably, Mother has also failed to properly address her substance abuse history (*Id.* at 14-5). Despite Mother's use of PCP and marijuana contributing to Child's adjudication as dependent, Mother has largely failed to comply with Court ordered monitoring of potential drug

8

use. Although Mother tested negative for narcotics on July 25, 2018 and August 2, 2018, she refused to take a forthwith screen on April 11, 2019, which would have allowed her to obtain community visits with Child. (*Id.* at 15). Although Mother alleges that the first screen given on April 11, 2019 was tampered with due to the screen administrator's error, she refused to give an additional sample. (*Id.* at 16). Instead, she returned to give a sample on a date she selected April 12, 2019. (*Id.* at 17). Additionally, Mother failed to complete any random drug testing during the period of September 2018 to May 2019. (*Id.* at 15). Instead, Mother only attended drug screens that she pre-arranged. Throughout the entire pendency of the case, Mother only attended seven of twenty-one drug screens. (*Id.* at 16). This lack of compliance alarmed Ms. McNeil, as it indicated a clear lack of consistency with her court objectives and raised concerns about Mother's sobriety. (*Id.* at 20). Although Mother complied with screens she arranged, the lack of participation in random drug screens indicates Mother failed to properly address one of the most contributing factors to Child's dependency.

These minimal objectives would have demonstrated Mother's interest in caring for her child; however, Mother made little efforts to fulfill these objectives. Additionally, Mother offered no evidence that she made even the slightest efforts to re-establish ties with her child during the six-month period prior to the filing of the termination petitions. Accordingly, this Court found termination of Mother's parental rights warranted pursuant to 2511(a)(1).

### 2. This Court Properly Terminated Mother's Parental Rights Pursuant to Section 2511(a)(2)

When terminating parental rights pursuant to Section 2511(a)(2), the moving party must prove by clear and convincing evidence

9

[t]he repeated and continued incapacity, neglect, abuse or refusal of the parent has caused the child to be without parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2); *See also, In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). Additionally, the grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct, but may also include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002). In *In re Adoption of M.E.P.*, Westmoreland County Children's Bureau took custody of the child, citing the mother's inability to care for her child due to the mother's mental handicap. 825 A.2d at 1268. Following adjudication of the child, the mother was ordered to apply for welfare program, obtain housing, and receive counseling in order to promote her independence and parenting skills. *Id.* at 1269. It was reported that the mother did not attempt to obtain welfare or housing and refused counseling. *Id.* As a result, the trial court terminated the mother's parental rights approximately two years after the child was removed from the home. *Id.* at 1270. The Superior Court found that the mother's inability to develop parenting skills, along with her refusal to fulfill her objectives, would leave the child without proper parental care; thus, termination of the mother's parental rights was warranted under Section 2511(a)(2). *Id.* at 1273.

Applying *M.E.P.* and the elements set forth under 2511(a)(2) to the instant case, it is clear that DHS met their burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Mother failed to demonstrate a concrete desire or ability to remedy the problems that led to the Child's placement. Mother failed to obtain stable housing throughout the pendency of this case. At the TPR hearing,

10

Mother claimed she resides with Maternal Grandmother; however, she provided the Court with a different mailing address. (*Id.* at 14, 26). More importantly, Ms. McNeil also testified that Mother refused to comply with court order random drug screens in order to confirm her continued sobriety. (*Id.* at 15) In fact, Mother failed to attend random drug screens for approximately one year and failed to complete a forthwith drug screen, despite knowing that compliance would reinstate community visits and potentially eliminate the need for future random drug screens. (*Id.* at 15, 16). This lack of compliance raised significant concerns, as Mother has a history of positive drug screens for PCP and marijuana. Since the last removal in July 2018, Child had been in care for approximately fourteen months, yet Mother had been unable to remedy any of the instability that barred reunification. Additionally, Mother failed to keep Child up to date medically while he was in her custody. (*Id* at 24). This Court found that Mother's failure to fully comply with her objectives throughout the life of the case has left the Child without essential parental care, and the cause of such neglect, refusal and continued incapacity will not be remedied by Mother. Based on the foregoing, this Court found that competent evidence existed to justify the termination of Mother's parental rights pursuant to Section 2511(a)(2).

### 3. This Court Properly Terminated Mother's Parental Rights Pursuant to Sections 2511(a)(5) and (8)

As the requirements for terminating parental rights under Sections 2511(a)(5) and (8) are similar, this Court will address them simultaneously. To terminate pursuant to 2511(a)(5), the petitioner must prove that

> (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal or placement of the child continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parent are

11

unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re B.C.*, 36 A.3d 601, 607 (Pa. Super. 2012)[3]. In order to terminate under 2511(a)(8), the petitioner must prove that "(1) the child has been removed from the care of the parent for at least twelve months; (2) the conditions that led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re C.L.G.*, 956 A.2d 999, 1005 (Pa. Super. 2008)[4]. Furthermore, unlike 2511(a)(5), termination under 2511(a)(8) does not require an evaluation of a parent's willingness or ability to remedy the conditions that led to placement. *See In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted). Instead, 2511(a)(8) "requires only that the conditions continue to exist, not an evaluation of parental willingness or ability to remedy them." *C.L.G.*, 956 A.2d at 1007 (*citing In re S.H.*, 879 A.2d 802, 806) (Pa. Super. 2005)).

---

[3] In *In re B.C.*, 36 A.3d 601 (Pa. Super. 2012), for example, Children and Youth Services obtained custody of the child after reports were received indicating that the mother and father could not care for the child. *Id.* at 608. In affirming the termination of the father's parental rights, the Superior Court emphasized the father's failure to comply with his objectives from Children and Youth Services, including obtaining housing and addressing his history as a sex offender through treatment. *Id.* The court stressed that the father's refusal to enter into treatment for the crimes he perpetrated led to the unsafe condition still being present. *Id.* Furthermore, the court determined that the father's refusal to participate in his objectives demonstrated that the services provided to him would not remedy the dependency. *Id.* at 610. Lastly, the court found that terminating the father's parental rights would best serve the needs and welfare of the child as it would provide the child with stability. *Id.* at 610.

[4] In *In re C.L.G.*, 956 A.2d 999 (Pa. Super. 2008), for example, the child was removed from the mother's care after the child tested positive for cocaine at birth. *Id.* Also, the mother did not have adequate housing and could not properly care for the child. *Id.* The largest obstacle to reunification was the mother's continued drug use and inability to obtain stable housing. *Id.* at 1005. The trial court terminated the mother's parental rights pursuant to 2511(a)(8) approximately one year after the child was removed from her care. *Id.* at 1003. The Superior Court affirmed the trial court's ruling, stressing that waiting further for the mother to comply would toll the child's wellbeing. *Id.* at 1007. In the interest of creating stability for the child, the court found that termination of the mother's parental rights would best serve the needs and welfare of the child. *Id.* at 1008-1009.

In the instant case, this Court determined that DHS satisfied the requirements of Sections 2511(a)(5) and (8). The Child has been in care for approximately twenty-eight of the last thirty-two months. (N.T. 11/6/19 at 13). He was initially removed from Mother's home amid concerns regarding Mother's positive drug screen for PCP and marijuana and Child's unexplained skull fracture. (*Id.* at 8). Despite a brief reunification with Mother from February 2018 to July 2018, Child has remained in DHS custody since July 2018 due to Mother's unstable housing and her failure to keep Child up to date medically. (Trial Court Order 7/23/2018). Since that time, Mother has failed to remedy the issues that prevented reunification (N.T. 11/6/19 at 9-10). Significantly, Mother has failed to comply with court ordered drug screens. (*Id.*). One of the primary concerns that initiated this case was Mother's confirmed use of PCP and marijuana. (*Id.* at 8). Because Mother refuses to submit to random drug tests, it is unclear that she has maintained her sobriety and remedied a large contributing factor to Child's dependency. Additionally, Mother has been unable to find stable housing. (Id. at 20). Although Mother claims to reside with Maternal Grandmother, she still receives mail at another address which suggests a lack of permanency. Also, Mother has failed to maintain stable employment to financially support her and Child. (*Id.* at 20). As a result, this Court believes that Mother will not remedy the conditions which led to the placement of her child. Also, Mother's refusal to participate in her objectives demonstrates that the services provided to her would not alleviate the circumstances which necessitated the original placement of the Child. Moreover, the evidence clearly established that termination would be in the best interest and welfare of the Child as he is well-adjusted in his pre-adoptive home and has a strong bond with their foster parent. *(See Id.* at 19-20). Thus, this Court properly terminated Mother's parental rights pursuant to Sections 2511(a)(5) and (8).

13

## C. This Court Properly Ruled that it Would be in the Child's Best Interest to Terminate the Parental Rights of Mother Pursuant to Section 2511(b)

Having found that the statutory grounds for termination have been satisfied pursuant to 2511(a), this Court further found that termination of Mother's parental rights serves the best interest of the Child pursuant to 2511(b).[5]

Under Section 2511(b), the party seeking termination must prove by clear and convincing evidence that termination is in the best interest of the child. *In re Bowman*, 647 A.2d 217, 218 (Pa. Super. 1994). In determining the best interest of the child, courts must consider both the needs and welfare of the child. *In re K.Z.S.*, 946 A.2d 753, 760 (Pa. Super. 2008). Intangibles such as love, comfort, security and stability are also considered when making a determination. *Id.* (*citing In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006)). Furthermore, the parent-child relationship is examined in order to determine what effect the potential termination would have on the child. *See K.Z.S.*, 946 A.2d at 760. Typically, when examining the nature of the parent-child relationship, courts must consider whether there is a natural bond between the parent and child, and if termination of parental rights would sever "an existing, necessary, and beneficial relationship." *Id.* In cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *Id.* at 762-63.

In the instant matter, this Court determined that the Child would not suffer irreparable emotional harm if Mother's parental rights were terminated. There was compelling testimony offered at the TPR hearing from the CUA worker that the child would not be irreparably harmed if Mother's parental rights were terminated. (*See* N.T. 10/20/17 at 20-21). Although the CUA

---

[5] *See In re L.M.*, 923 A.2d 505, 511(Pa. Super. 2007) ("Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b)").

worker acknowledged that there was a bond between Mother and Child, she clarified that Child does not seek comfort and care from Mother. (*Id.* 19-20). Instead, Child receives comfort from others, including foster parents. (*Id.*). The testimony demonstrated that the Child's primary attachment is with his foster parents. (*See Id.* at 20). This Court believes that we are nowhere closer to reunification now than we were when this case first came in in January 2017. Additionally, in determining that termination would best serve the needs and welfare of the Child, this Court considered that Mother has not been able to meet the Child's emotional, physical, and developmental needs, or provide the Child with a healthy, safe environment for thirty-two months prior to the TPR hearing. (*Id.* at 25-26). For the foregoing reasons, this Court properly granted DHS's petition to involuntarily terminate the parental rights of Mother pursuant to Section 2511(b).

## III.   CONCLUSION

Accordingly, this Court respectfully requests that the instant appeal be denied.

BY THE COURT:

J.

15